# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 21-1639

———————————————

Christopher Lankford

*Plaintiff - Appellant*

v.

City of Plumerville, Arkansas

*Defendant - Appellee*

Conway County, Arkansas

*Defendant*

Albert Duvall, Individually

*Defendant - Appellee*

———————

Appeal from United States District Court
for the Eastern District of Arkansas

———————

Submitted: April 12, 2022
Filed: August 2, 2022

———————

Before SMITH, Chief Judge, WOLLMAN and GRASZ, Circuit Judges.

———————

GRASZ, Circuit Judge.

Christopher Lankford was severely injured when his motorcycle crashed into a police SUV while he was fleeing from police. Lankford sued the City of Plumerville, Arkansas (the "City"), and its police officer for use of excessive force. The district court[1] granted summary judgment to the City and the officer. We affirm.

## I. Background

Taylor Dube, a police officer in Morrilton, Arkansas—Plumerville's neighboring town—observed a passenger fall off the back of a motorcycle while it was traveling at around fifty miles per hour. Dube approached and turned on his blue lights to check on the situation. Lankford, who was driving the motorcycle and knew there were outstanding warrants for his arrest, hit the accelerator and fled from Dube. Dube pursued Lankford, and Dube's dashcam captured the ensuing over-three-minute chase. Lankford ran a stop sign, weaved through traffic, and several times crossed into the lane of oncoming traffic on a two-lane highway at high speeds. At one point during the pursuit, Dube communicated over the radio that Lankford was traveling 110 miles per hour.

Other officers joined the pursuit, including the Morrilton Police Department Corporal Adam Bryant. As Lankford drew near to Plumerville, Bryant requested assistance from Plumerville police, specifically telling the Conway County Dispatch to "[s]hut it off towards the interstate." Dispatch called Plumerville's Assistant Chief of Police, Albert Duvall, who was the only Plumerville police officer on duty at the time. Dispatch told Duvall that Morrilton police officers were pursuing a motorcycle traveling over 100 miles per hour toward Plumerville on Highway 64. Duvall stated that he believed that if the chase proceeded on Highway 64 into Plumerville, it would go through the town's center and put dozens of people in life-threatening danger. So, Duvall turned on his SUV's lights and sirens and drove to the outskirts of town on Highway 64. Duvall claims that as he was en route, he asked

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

dispatch, "What does Morrilton want me to do?  Do they want me to try to block the road?"  Duvall claims—but Lankford questions—that the dispatcher responded with an affirmative "10-4."

Duvall testified that shortly thereafter he saw blue lights approaching on Highway 64.  Duvall stopped his police SUV in the road with his lights and sirens still on.  The parties dispute the angle at which Duvall turned his SUV into the road when he stopped.  Duvall claims he turned his SUV at a forty-five-degree angle leaving room for Lankford to get around the SUV.  Lankford claims the SUV sat perpendicular to the road.  The parties also dispute the visibility of Duvall's SUV as Lankford approached.  Although it was a clear day, Lankford claims the SUV was not clearly visible to him because it was parked in a shadow behind a curve.  The City and Duvall claim Lankford had sufficient visibility of the SUV to safely stop before colliding with it.  Duvall reported he could see the motorcycle approaching from 1,000 to 1,200 feet from his position.

It is undisputed that Lankford made no attempt to stop but rather continued his flight.  Lankford asserts that as he approached and attempted to evade Duvall's SUV, Duvall "pulled out in front of [him]" to ensure a collision.  The City and Duvall disagree, claiming the SUV remained stationary until Lankford collided with it.  Regardless, Lankford's motorcycle hit the side of Duvall's SUV, hurling Lankford from his motorcycle and severely injuring him.  Lankford testified he used alcohol and marijuana that day and was possibly intoxicated during the chase.

Lankford sued the City, Duvall, and Conway County under 42 U.S.C. § 1983, claiming they violated his Fourth and Fourteenth Amendment right against unreasonable seizure because police used excessive force to seize him.  The parties agreed to dismiss Conway County.  The City and Duvall moved for summary judgment.  The district court granted summary judgment in favor of the City and Duvall, holding Duvall's use of force, even if considered deadly force, was justified because Lankford's driving endangered the lives of officers and bystanders.  Lankford appeals.

## II. Analysis

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Lankford, the nonmoving party. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). We affirm a grant of summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not material and thus does not preclude summary judgment unless it "might affect the outcome of the suit." *Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022) (quoting *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019)).

Claims against local police for excessive force during a seizure are analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine the reasonableness of a seizure[2] under the Fourth Amendment standard, we weigh "the totality of the circumstances, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight.'" *Est. of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012) (quoting *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009)). We have consistently held deadly force is not unreasonable where an officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019) (quoting *Cook*, 686 F.3d at 497). Specific to police chases, the Supreme Court has held, "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott v. Harris*, 550 U.S. 372, 386 (2007). We conclude the undisputed evidence reveals Duvall had probable cause to believe Lankford's flight threatened the lives of innocent

---

[2]While not expressly conceding the point, Duvall and the City do not dispute Duvall seized Lankford for purposes of this appeal. Thus, the central issue in this appeal is whether the seizure was reasonable.

bystanders as well as police. Accordingly, we hold Duvall's actions were reasonable.

Dube's dashcam footage reveals the serious threat of physical harm Lankford posed to officers and bystanders while he actively evaded arrest. *See id.* at 380–81 (holding that when undisputedly reliable video footage captures the relevant events, the evidence should be viewed in "the light depicted by the videotape"). During the over-three-minute chase, Lankford is seen traveling over 100 miles per hour, weaving around vehicles on a two-lane highway, and several times crossing into the lane of oncoming traffic compelling law enforcement to do the same and forcing other vehicles to a narrow shoulder of the road. The Supreme Court and this court have held an officer's use of deadly force reasonable in similar police chases. *See id.* at 379–81 (holding deadly force was reasonable where suspect was traveling at high speeds, running red lights, crossing into the wrong lane, and swerving between vehicles on a two-lane road at night); *Plumhoff v. Rickard*, 572 U.S. 765, 776–77 (2014) (holding an officer was reasonable in shooting a fugitive who was "intent on resuming" a chase in which he had been traveling at over 100 miles per hour while swerving through traffic for over five minutes); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (holding an officer's use of deadly force was not unreasonable where a semi-truck had careened through traffic at ninety miles per hour, forcing several motorists off the road, for over fifty miles).

Lankford attempts to distinguish this precedent by asserting Duvall did not know most of the details of the pursuit but only knew that Lankford was traveling over 100 miles per hour on Highway 64 toward Plumerville. We hold, however, that the information Duvall knew sufficiently established probable cause that Lankford posed a threat of serious physical harm or death to others. Duvall received a call from dispatch requesting his help with a high-speed pursuit of a motorcycle traveling around 100 miles per hour coming toward Plumerville on Highway 64, which goes through the heart of Plumerville. Duvall also knew he was the last line of defense between Lankford and downtown Plumerville. Lankford does not cite any precedent holding an officer unreasonable in terminating a police chase heading toward a

populated or frequented area at speeds greater than 100 miles per hour. *See generally Mullenix v. Luna*, 577 U.S. 7, 15 (2015) (noting "[t]he [Supreme] Court has . . . never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment"). Instead, Lankford relies primarily on four cases where the plaintiff was not a motorist fleeing from police. *See Williams v. City of Burlington*, 27 F.4th 1346, 1349 (8th Cir. 2022) (police officer shot suspect fleeing on foot); *Est. of Richards v. Hutchins*, 959 F.3d 1127, 1131 (8th Cir. 2020) (man walking away from a house shot by police); *Malone v. Hinman*, 847 F.3d 949, 951–52 (8th Cir. 2017) (police officer shot a man fleeing on foot); *Hawkins v. City of Farmington*, 189 F.3d 695, 698–99 (8th Cir. 1999) (police officer collided with motorcyclist not being chased by police).

The record also demonstrates that Duvall believed Morrilton police officers wanted him to block the road. Duvall, cognizant of his own lack of knowledge, asked the dispatcher whether the Morrilton officers wanted him "to try to block the road," to which the dispatcher allegedly responded in the affirmative with "10-4." While Lankford disputes whether the dispatcher responded with the expression "10-4," Lankford admitted "Morrilton police officers asked for a roadblock," and the record demonstrates Duvall understood dispatch's response as affirming that Morrilton police officers wanted him to block the road. Lankford claims, however, that Morrilton police requested a different kind of roadblock than the one Duvall set up, asserting Morrilton police "did not request that a car be placed perpendicular to Highway 64[.]'" Whatever kind of roadblock Morrilton police officers envisioned, Duvall, in a tense and time-sensitive situation, reasonably relied on the judgment of fellow police officers as he understood it through dispatch's report.[3] Under the

_____

[3]In other contexts, we have applied the "collective knowledge doctrine" to impute the knowledge of all officers involved in an investigation to a seizing officer where, like here, there is some communication to the seizing officer making him believe there is probable cause. *See, e.g.*, *United States v. Mosley*, 878 F.3d 246, 254 (8th Cir. 2017); *United States v. Poe*, 462 F.3d 997, 1001 (8th Cir. 2006); *United States v. Williams*, 429 F.3d 767, 771–72 (8th Cir. 2005). While we have not applied the collective knowledge doctrine to justify use of deadly force, *but see Tillis v. Brown*, 12 F.4th 1291, 1302 (11th Cir. 2021) (imputing collective knowledge of "the

totality of these circumstances, we conclude Duvall had probable cause to believe Lankford posed a threat of serious physical injury or death to police officers and bystanders.

Moreover, we find the severity of Duvall's use of force was mitigated by the opportunity Duvall gave Lankford to avoid the collision. "[D]eadly force" is not a "magical on/off switch that triggers rigid preconditions." *Scott*, 550 U.S. at 382. Some types of deadly force pose a lower likelihood of serious injury than others. *See id.* at 384. Accordingly, certain kinds of deadly force may be more reasonable than others under the same facts. Here, Duvall's use of a roadblock, even if perpendicular to the road, was a reasonable use of deadly force.

Lankford argues Duvall's SUV was hidden behind a curve in a shadow making it imperceptible to Lankford until it was too late. But the video evidence, even when viewed in the light most favorable to Lankford, discredits Lankford's version of events. *See id.* at 380 (rejecting the nonmoving party's version of events on summary judgment because it was "utterly discredited" by an undisputed video recording). While Duvall's SUV was parked in a shadow after a bend in the road, the bend in the road was slight and the shadow did not render Duvall's SUV invisible. On Dube's dashcam footage, the flashing lights of Duvall's SUV can be seen five-to-seven seconds before the collision. And Dube, who was two-to-three seconds behind Lankford traveling at a similar speed to Lankford in a larger vehicle,

---

police" to a single police officer to justify the officer's use of deadly force), it is rooted in the principle that officers may reasonably rely on the information and judgment of other officers. *See United States v. Allen*, 705 F.3d 367, 370 (8th Cir. 2013) ("In deciding whether to conduct a *Terry* stop, an officer may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999))). We also note an officer is ordinarily reasonable in relying on the veracity of dispatch's relay of such information. *See Chevallier v. Hand*, 722 F.3d 1101, 1104–05 (8th Cir. 2013) (holding a police officer was reasonable in relying on, among other things, a dispatch report of a potential crime).

was able to stop safely before the collision site. But Lankford did not take advantage of the opportunity to slow down to avoid or mitigate the collision and instead tried to dodge Duvall's SUV at a high speed. Because Duvall gave Lankford sufficient opportunity to avoid or lessen the impact of the collision by stopping or slowing down, we conclude Duvall's use of force was less severe than in the cases cited by Lankford in which police officers shot a fleeing suspect, *see Williams*, 27 F.4th at 1349; *Hutchins*, 959 F.3d at 1131 (shooting without warning); *Malone*, 847 F.3d at 951, or allegedly jutted out from a median to collide with an unsuspecting motorcyclist, *Hawkins*, 189 F.3d at 699.

Lankford asserts that just before the crash Duvall moved his SUV forward to engineer the collision with Lankford's swerving motorcycle. Lankford argues that Duvall's moving his SUV just before the accident to engineer a collision makes this case like *Hawkins*, where we held a jury could conclude an officer acted unreasonably when he pulled out from a median and collided with a motorcyclist the officer mistakenly believed was fleeing from police. *See Hawkins*, 189 F.3d at 699, 702, 707. Even assuming Duvall moved his SUV to engineer the collision, we still hold Duvall's act was reasonable as a matter of law.

This case is not like *Hawkins*. In *Hawkins*, a police officer drove out of a median and allegedly sideswiped a motorcyclist who was not fleeing from police officers and who testified that he did not suspect the police officer was coming out from the median to stop him until the police cruiser struck his motorcycle. *Id.* at 698–99. Here, Lankford was fleeing from police officers at over 100 miles per hour and was in no way unsuspecting. Duvall parked his SUV across the road—not in a median like in *Hawkins*—giving Lankford an opportunity to see the SUV and avoid or mitigate the collision. Then, Duvall purportedly made a split-second decision to cut off Lankford when Lankford attempted to evade Duvall's SUV at dangerously high speeds. Viewing the totality of these circumstances, we conclude this case is more like the cases in which a police officer was justified in ending a dangerous, high-speed chase. *See Scott*, 550 U.S. at 380–81; *Plumhoff*, 572 U.S. at 776–77; *Cole*, 993 F.2d at 1333.

Finally, we address perhaps Lankford's strongest evidence of unreasonableness—Morrilton police officers' testimony that Duvall's roadblock would only be appropriate in a deadly force situation and that Lankford's flight was not a deadly force situation. We assess the reasonableness of deadly force for Fourth Amendment purposes from the seizing officer's perspective at the time of the incident. *Cole*, 993 F.2d at 1333. The testifying Morrilton police officers were able to review dashcam footage and make a calculated, post hoc analysis. Duvall, on the other hand, made a quick decision based on information he received that a high-speed chase was coming toward his town and that Morrilton police officers were requesting a roadblock. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. We appreciate the Morrilton police officers' testimony that deadly force was unnecessary in the given situation. But based on Duvall's knowledge at the time when he was forced make a quick judgment, we conclude the Fourth Amendment's reasonableness standard gave Duvall more leeway than would have the Morrilton police officers.

## III. Conclusion

For the reasons stated herein, we affirm the district court's grant of summary judgment in favor of the City and Duvall.

———————————————