# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3618

_____

Cassidy Jared Loch; Saara Loch

*Plaintiffs - Appellants*

v.

City of Litchfield; Litchfield Police Officer Travis Rueckert

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 12, 2012
Filed: August 27, 2012

_____

Before MURPHY, MELLOY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Cassidy Loch and his wife, Saara Loch, brought this action under 42 U.S.C. § 1983, alleging that City of Litchfield police officer Travis Rueckert employed excessive force when he shot Cassidy Loch eight times. The Lochs also assert state-law tort claims against Rueckert and seek to hold the City vicariously liable for

Rueckert's actions. The district court[1] granted summary judgment for the defendants, ruling that Rueckert was entitled to qualified immunity on the § 1983 claim and that official immunity barred the Lochs' state-law claims. The Lochs appeal, and we affirm.

## I.

On March 14, 2009, the Lochs attended a party at a friend's home. Saara left the party around 10:00 or 10:30 p.m., but returned around 1:00 a.m. with her brother, Seth Rokala, to pick up Cassidy. Cassidy, who was very intoxicated, did not want to leave the party, and the Lochs began to argue. Rokala tried to take Cassidy's keys to prevent him from driving, but Cassidy entered his truck and drove away. Saara and Rokala pursued Cassidy in another vehicle.

Upon arriving at the Lochs' home, Saara and Rokala found Cassidy's truck in the driveway. Rokala parked behind the truck to block Cassidy from leaving, and Saara went into the house. Inside, she encountered Cassidy, who looked at Saara, said nothing, and went outside to his truck. Cassidy tried to maneuver his truck out of the driveway but struck Saara's vehicle. Cassidy's mother, Gail, arrived in response to a phone call from Saara and positioned her vehicle to block Cassidy's exit. Undeterred, Cassidy attempted to drive through the yard, but his truck became stuck in a snowbank.

Rokala began to argue with Cassidy, as Saara and Gail urged Cassidy to get out of the truck and calm down. Rokala's wife, Elizabeth, called the police at 1:31 a.m. and reported that Cassidy was "drunk and . . . driving out of control in his yard." A

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

dispatcher sent Officer Rueckert to the Lochs' home, telling him that there was a man there "under the influence [and] trying to leave the residence."

Meanwhile, while still in his truck, Cassidy drew a .45 caliber handgun, pointed it at his chin, and said "is this what you want me to do?" He then struck the driver's side window with the gun, shattering the window. Rokala began to fight Cassidy for the gun and tried to pull him out of the truck.

Officer Rueckert arrived on the scene and parked his vehicle in the street. As Rueckert began walking toward Cassidy's truck, Rokala yelled that Cassidy had a gun. Rueckert drew his firearm and retreated to his vehicle, taking cover behind the engine block and notifying his dispatcher by radio that someone at the scene had a gun. Around this time, Rokala saw Cassidy throw his gun out the window. Rueckert, however, did not see Cassidy throw the firearm, and Rokala did not tell Rueckert that Cassidy had done so. From behind his vehicle, Rueckert watched as Cassidy tried to open the driver's side door of the truck. Finding the door blocked by a tree, Cassidy kicked the glass out of the window and climbed out of the vehicle.

Once outside, Cassidy engaged Rokala in a "nose-to-nose" confrontation. Fearing for Rokala's safety, Rueckert pointed his firearm at Cassidy and ordered everyone to get on the ground. Rather than heed this command, Cassidy turned and began walking toward Rueckert with his hands raised above his head or extended out to his sides. As Cassidy continued toward him, Rueckert began backing up and repeatedly ordered Cassidy to the ground. Cassidy did not comply, and Rueckert heard him say something that included the word "kill." Saara, Gail, and Rokala yelled that Cassidy was unarmed, but Rueckert denies hearing them.

Cassidy continued toward Rueckert, and as he reached the edge of the street, Cassidy slipped on a snowbank and tried to right himself. As he did so, one of Cassidy's hands moved toward his side. Rueckert began firing, and Cassidy was hit

multiple times. In an interview several hours after the shooting, Rueckert told an investigator that he had seen a black object on Cassidy's hip and believed it was a holster or firearm. It turned out that Cassidy was wearing a cell phone holder on his side.

After the shooting, Rueckert radioed "shots fired, one down," and requested assistance, stating, "I don't have the gun yet." Litchfield Chief of Police Patrick Fank arrived on the scene, and Rueckert told Fank that he had not yet recovered the firearm. Rueckert did not mention the black object on Cassidy's hip. Rueckert searched Cassidy's person and truck, but found no firearm. Rokala eventually led Rueckert to the gun, which sat in the snow near Cassidy's truck.

The Lochs filed suit under § 1983, alleging that Rueckert employed excessive force in violation of the Fourth Amendment. They also brought state-law claims against Rueckert for assault, battery, and intentional infliction of emotional distress, and Saara sued for loss of consortium.[2] The district court granted summary judgment for the defendants. The court ruled that Rueckert's use of deadly force was objectively reasonable under the circumstances, and that Cassidy therefore could not establish the violation of a constitutional right. The court concluded that the Lochs' state-law claims were barred by official immunity under Minnesota law.

II.

We review *de novo* the district court's order granting summary judgment, viewing the evidence in the light most favorable to the Lochs and drawing all reasonable inferences in their favor. *Schoelch v. Mitchell*, 625 F.3d 1041, 1045 (8th

---

[2]The Lochs brought a failure-to-train claim against the City and state-law claims against the City for negligent hiring, supervision, and retention. The Lochs do not pursue these claims on appeal.

Cir. 2010).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A.

The Lochs argue that there are genuine issues of fact about whether Rueckert's use of force was objectively reasonable and whether Rueckert is entitled to qualified immunity against the Lochs' excessive force claim.  Qualified immunity shields a government official from liability and the burdens of litigation unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation.  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Lochs' claim of excessive force is governed by the Fourth Amendment's prohibition against unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. *Id.* at 397.  We must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest. *Id.* at 396.  The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  We judge the reasonableness of Rueckert's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

The Lochs argue that the force used was excessive under the circumstances. They emphasize that Rueckert never saw a firearm before he shot Cassidy. In the Lochs' view, Rueckert's explanation of seeing a black object on Cassidy's hip is not credible, because he did not mention that observation until several hours after the shooting. The Lochs also note that several people at the scene yelled to Rueckert that Cassidy was unarmed as he approached the officer, and they emphasize that Cassidy's arms were raised or extended at his sides, suggesting that he was trying to comply with the officer's orders. Finally, the Lochs point out that Rueckert did not warn Cassidy that he would be shot if he failed to halt.

Even accepting the facts cited by the Lochs, we conclude that Rueckert's use of force was objectively reasonable. Rueckert responded to the Loch residence on the report of an intoxicated man attempting to leave in a vehicle. The dangerousness of the situation escalated when, upon arriving at the scene, Rueckert learned from Rokala that the man in the truck was armed with a firearm. Rueckert took cover and watched as Cassidy climbed out of the truck and confronted Rokala in a "nose-to-nose" argument. Having just been told that Cassidy had a gun, Rueckert acted reasonably in drawing his firearm and ordering Cassidy to the ground to prevent harm to Rokala or others at the scene.

Although Cassidy had by this time thrown his firearm in the snow, the Lochs acknowledge that Rueckert did not observe that action. Instead of complying with Rueckert's command to get on the ground, Cassidy turned and moved toward the officer. The Lochs, noting that Cassidy's arms were raised above his head or extended at his sides, suggest that Cassidy was simply trying to find a suitable place to get on the ground, because his truck sat near a tree and snowbank. But even if Cassidy's motives were innocent, a reasonable officer on the scene could have interpreted Cassidy's actions as resistance. It is undisputed that Cassidy continued toward Rueckert despite the officer's repeated orders to get on the ground while Rokala, who had just been engaged in a "nose-to-nose" argument with Cassidy

-6-

outside of the truck, readily complied with Rueckert's command. Thus, a reasonable officer could believe that Cassidy's failure to comply was a matter of choice rather than necessity.

The Lochs also note that Cassidy never brandished or aimed a firearm, and they assert broadly that "[i]t is objectively unreasonable to use deadly force against an unarmed suspect." That is not the law. An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment. *Krueger v. Fuhr*, 991 F.2d 435, 439 (8th Cir. 1993). Even if a suspect is ultimately "found to be unarmed, a police officer can still employ deadly force if objectively reasonable." *Billingsley v. City of Omaha*, 277 F.3d 990, 995 (8th Cir. 2002).

The Lochs argue that a genuine issue of fact exists as to whether Rueckert reasonably believed Cassidy was armed at the time of the shooting. They emphasize that several witnesses yelled to Rueckert that Cassidy was unarmed, and they contend that Rueckert's explanation of seeing a black object on Cassidy's hip was simply an after-the-fact justification for the shooting.

Even assuming Rueckert heard witnesses yell that Cassidy was unarmed, we agree with the district court that a reasonable officer in Rueckert's position still "would be on alert that Cassidy could possibly be armed." Rokala told Rueckert that Cassidy had a gun, and Rueckert did not see Cassidy toss the firearm. After confronting Rokala, Cassidy turned and moved toward the officer. Rokala estimated that just fifteen to twenty seconds elapsed between the time he told Rueckert that Cassidy had a gun and when he told Rueckert that Cassidy was unarmed. Rokala also believes that no more than fifteen to thirty seconds passed between his argument with Cassidy and the shooting. Even if Rueckert heard witnesses yell that Cassidy was now unarmed, these facts presented the type of "tense, uncertain, and rapidly evolving" situation requiring "split-second judgments" that we are hesitant to second-guess with the benefit of hindsight. *Graham*, 490 U.S. at 396-97. A reasonable

-7-

officer in Rueckert's position, having just been told that Cassidy had a gun, could not know the truth of the bystanders' claims that Cassidy was now unarmed as he continued to approach the officer.

The Lochs also suggest that a reasonable jury could disbelieve Rueckert's claim that he saw a black object on Cassidy's hip and thought it was a gun or a holster. If Rueckert's claim were true, the Lochs contend, then Rueckert would have mentioned the object to Chief Fank at the scene, rather than raising it several hours later when questioned by an investigator. Even assuming Rueckert did not see the black object, his use of force was still objectively reasonable. Rueckert knew he was dealing with an intoxicated individual, and he had been told that Cassidy had a gun. Although others on the scene later yelled that Cassidy was unarmed, Rueckert was in no position—with Cassidy continuing toward him—to verify which version was true. Rueckert heard Cassidy say "kill" as he continued toward the officer. Cassidy then slipped on the snow, and one of his hands moved toward his side. In these circumstances, a reasonable officer could believe that deadly force was necessary to protect himself from death or serious harm.

Finally, the Lochs fault Rueckert for failing to warn Cassidy that he would shoot if Cassidy did not halt. Before employing deadly force, an officer should give "some warning" when it is "feasible" to do so. *Garner*, 471 U.S. at 11-12. Although Rueckert did not issue a specific warning before firing, he acted reasonably. Rueckert drew his firearm, pointed it at Cassidy, and repeatedly ordered him to get on the ground. Rueckert's conduct should have put Cassidy on notice that his "escalation of the situation would result in the use of the firearm." *Estate of Morgan v. Cook*, 686 F.3d 494, 498 (8th Cir. 2012). The lack of a more specific warning does not render Rueckert's use of force unreasonable. *See id.*; *Krueger*, 991 F.2d at 440. The district court properly granted summary judgment in favor of Rueckert on the Lochs' § 1983 claim.

B.

The Lochs also allege that the City is "vicariously and supervisory liable" for Rueckert's actions. The Lochs do not articulate whether they seek to hold the City vicariously liable on their § 1983 claim or on their state-law tort claims. It is well-established, however, that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The district court ruled that if the Lochs seek to hold the City liable for Rueckert's alleged state-law torts, then Rueckert is entitled to official immunity, and the City is thus entitled to vicarious official immunity. We agree with this conclusion. Under Minnesota law, police officers performing discretionary functions are entitled to official immunity unless they act with malice. *See Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 (Minn. 1999). This immunity extends to shield governmental entities from vicarious liability for an officer's actions. *See Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316 (Minn. 1998).

Rueckert's decision to use deadly force is a discretionary function, so he is entitled to official immunity absent a willful or malicious wrong. *See Hayek v. City of St. Paul*, 488 F.3d 1049, 1056 (8th Cir. 2007). Malice in this context "contemplates less of a subjective inquiry into malice . . . and more of an objective inquiry into the legal reasonableness of an official's actions." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). The Lochs make no claim on appeal that Rueckert acted with malice, and in light of our conclusion that Rueckert's actions were objectively reasonable, we agree with the district court that no reasonable jury could find that Rueckert's conduct was willful or malicious. *See Hayek*, 488 F.3d at 1056-57. The district court properly held that Rueckert and the City are entitled to official immunity.

\* \* \*

The judgment of the district court is affirmed.

_____