# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4209

_____

Skip Rogers, Administrator for the Estate of Marilyn Denise Ambrose-Boyd;
Michael Andrew Boyd

*Plaintiffs - Appellants*

v.

Aaron King, Individually and in his Official Capacity as a Police Officer for the
City of Ankeny; Gary Mikulee, Individually and in his Official Capacity as Chief
of Police for the City of Ankeny, Iowa; Ankeny, Iowa

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 18, 2017
Filed: March 23, 2018

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

During a welfare check, Officer Aaron King shot and killed Marilyn Denise
Ambrose-Boyd. Her son, Skip Rogers, and her husband, Michael Boyd, brought this
action under 42 U.S.C. § 1983, alleging that Officer King had violated her Fourth

Amendment rights and several state laws. Their complaint also named Police Chief Gary Mikulec and the City of Ankeny as defendants, alleging (1) § 1983 liability for inadequate training and supervision of police officers and (2) respondeat superior vicarious liability. The district court[1] granted summary judgment to the defendants, concluding that Officer King was entitled to qualified immunity on the § 1983 claim and that Chief Mikulec and the City of Ankeny could not be held liable because Officer King had acted reasonably. Rogers and Boyd appeal, and we affirm.

I.

At around 5:00 PM on the evening of July 5, 2014, Ambrose-Boyd sent Rogers a series of text messages. Ambrose-Boyd told Rogers that she hoped he was happy and that she loved him and her grandchildren. She thanked him for a firearm and said she had "nothing more to live for" and told her son goodbye. Rogers unsuccessfully attempted to contact Ambrose-Boyd by text and phone. While Rogers was trying to reach his mother, his wife dialed 911. She told the 911 operator about the text messages and that Ambrose-Boyd owned a handgun. Officers were then dispatched to Ambrose-Boyd's home. Rogers also called Ambrose-Boyd's husband and asked him to check on Ambrose-Boyd, but did not mention that he was concerned she might be suicidal.

Officer Lopez was the first to arrive at Ambrose-Boyd's home. There was no response when he knocked at the front door, and he discovered it was locked. After Officers Williams and Christoph arrived, they went to the glass sliding door in the back where there was again no response. Officer Williams then decided to enter through the front door. After Officer King succeeded in kicking the door open, the officers drew their firearms and entered the house. Officers Christoph and King went

---

[1]The Honorable Charles R. Wolle, Senior District Judge for the Southern District of Iowa.

up the stairs shouting "Police department. Tell us where you're at. Show us your hands."

Officer Christoph testified that before he could see Ambrose-Boyd, he heard her say she was okay and wanted the officers to go away and leave her alone. He continued up the stairs, however, and saw her come out of a door on the second floor with a handgun in her right hand. Although Officer Christoph heard her identify herself as Denise, he could not recall whether that was while he was still on the stairwell or after he was able to see her. Officers Christoph and King both testified that she did not speak and appeared to be looking right through them. Officer King stated that he "noticed [this] right away" and called it "a thousand yard stare." He described it as "when somebody is looking essentially at you or your direction, but they don't acknowledge your existence. It's like they're looking straight through a hole in your body or a hole in the wall. . . . When you're looking back at them, it's like they're in a trance." Her appearance frightened both officers.

Officer Christoph stated that Ambrose-Boyd had initially "mov[ed] the gun around with her arm a little bit at her side." She then raised the gun up to her head, but did not hold it there for long before dropping it back down to her side. She continued to move her arm and wave the gun around. Although Ambrose-Boyd did not make any verbal threats or shoot her gun, she refused to comply with their commands to drop it. The officers did not warn her that she could be shot if she did not put the gun down. Both testified that Ambrose-Boyd pointed her gun near Officer Christoph's shins. Officer Christoph later explained that "once I realized the gun . . . had come up a little bit . . . I realized that she may be attempting to shoot me." Officer King fired three rounds at Ambrose-Boyd who died from the injuries she received.

Rogers and Boyd brought this action against Officer King alleging an excessive force claim under the Fourth Amendment and state law claims of assault and battery.

They also asserted claims against Police Chief Mikulec and the City of Ankeny for (1) failure to provide training and supervision in performing welfare checks and (2) liability under a theory of respondeat superior. The district court granted summary judgment in favor of all defendants. The court concluded that Officer King's use of deadly force had been objectively reasonable under the circumstances and that Chief Mikulec and the City of Ankeny could not be held liable for inadequate training or under a respondeat superior theory. Rogers and Boyd appeal.

II.

We review de novo a district court's order granting summary judgment on the basis of qualified immunity, "view[ing] the evidence in the light most favorable to the plaintiffs and draw[ing] all reasonable inferences in their favor." Dooley v. Tharp, 856 F.3d 1177, 1181 (8th Cir. 2017). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

Rogers and Boyd argue that there are genuine issues of fact about whether Officer King's use of force was objectively reasonable and whether he is entitled to qualified immunity. Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Officer King is thus "entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of violation." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012).

The Fourth Amendment's prohibition against unreasonable seizures provides the framework for excessive force claims. Partlow v. Stadler, 774 F.3d 497, 502 (8th Cir. 2014). The reasonableness of an officer's use of force depends "on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him." Loch, 689 F.3d at 965. Courts consider the totality of the circumstances, which includes "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest." Id. It is reasonable for an officer to use deadly force if he has "probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." Id. We examine the reasonableness of Officer King's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

Rogers and Boyd argue that the force Officer King used was excessive under the circumstances. They contend that Officer King and Officer Christoph disagree about whether Ambrose-Boyd was pointing the gun at herself or at Officer Christoph when Officer King shot her. They also emphasize that Ambrose-Boyd never threatened the officers and neither officer said they would shoot her if she did not drop the gun.

Viewing the evidence in the light most favorable to Rogers and Boyd, and considering the totality of the circumstances, we conclude that Officer King's use of deadly force was objectively reasonable. The officers responded to Ambrose-Boyd's home after receiving a 911 call report that she was home alone, suicidal, and had a gun. The dangerousness of the situation escalated as the officers found themselves in a hallway with Ambrose-Boyd holding a gun. Ambrose-Boyd failed to respond to commands to drop the weapon. The officers testified that her mental state added to their fears and that she raised the gun to Officer Christoph's shin level. At that time "a reasonable officer would have had probable cause to believe that [she] posed a

-5-

threat of serious physical harm, and any mistake in believing that [s]he posed such a threat was objectively reasonable." Partlow, 774 F.3d at 503. There is "no constitutional or statutory right" that prevents an "officer from using deadly force when faced with an apparently loaded weapon." Aipperspach v. McInerney, 766 F.3d 803, 807 (8th Cir. 2014) (quoting Sinclair v. City of Des Moines, 268 F.3d 594, 596 (8th Cir. 2001)).

Rogers and Boyd also argue that Officer King's use of force was unreasonable because he failed to warn Ambrose-Boyd that he would shoot if she did not drop the gun. When feasible an officer should first give a warning that he will use deadly force. Loch, 689 F.3d at 967. Although neither officer warned Ambrose-Boyd they would shoot before Officer King fired his weapon, Officer King nevertheless acted reasonably. Both had their firearms drawn and pointed at Ambrose-Boyd while repeatedly ordering her to drop the gun. This would have given Ambrose-Boyd adequate notice that any action the officers perceived as escalation could result in the use of deadly force. "The lack of a more specific warning does not render [Officer King]'s use of force unreasonable." Id. On this record we conclude that Officer King acted reasonably by shooting Ambrose-Boyd when he saw her raising the gun up towards Officer Christoph's shins.[2]

---

[2]The complaint also pled state tort claims of assault and battery against Officer King. Rogers and Boyd did not raise the state law claims in the Notice of Appeal or their opening brief. These claims are waived. See Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008).

B.

Rogers and Boyd also assert claims against Chief Mikulec[3] and the City of Ankeny. The plaintiffs assert that Chief Mikulec and the City of Ankeny are liable for failure to adequately train Officer King and are also liable for Officer King's actions under a theory of respondeat superior.

A municipality may be liable under § 1983 for failure to train if it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). A supervisor may be liable under § 1983 if he "(1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015). But such liability only attaches if an individual officer committed a constitutional violation. See Hayek v. City of St. Paul, 488 F.3d 1049, 1055 (8th Cir. 2007). Officer King did not commit a constitutional violation. Thus the City of Ankeny cannot be held liable under § 1983 for failure to train.

Rogers and Boyd also assert that Chief Mikulec and the City of Ankeny are liable under a theory of respondeat superior. Even if we were to conclude that Officer King's use of force was unreasonable, neither municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). The district court properly granted summary judgment in favor of Chief Mikulec and the City of Ankeny.

---

[3]Rogers and Boyd sued Chief Mikulec individually and in his official capacity. "A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006).

## III.

For these reasons, the judgment of the district court is affirmed.

_____