# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2028

_____

Eric Wenzel; Annie Alley; Thelma Wenzel

*Plaintiffs - Appellees*

v.

City of Bourbon, Missouri

*Defendant*

Carl Storm, in his individual capacity

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 15, 2018
Filed: August 9, 2018

_____

Before WOLLMAN, SHEPHERD, and ERICKSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

After Bourbon, Missouri, Police Officer Carl Storm shot and killed Gary Wenzel (Wenzel), Wenzel's children, Eric Wenzel and Annie Alley, and his mother,

Thelma Wenzel, (collectively, Plaintiffs) filed suit against Storm in federal district court. Plaintiffs alleged a claim under 42 U.S.C. § 1983, asserting that Storm had violated Wenzel's Fourth Amendment right to be free from excessive force.[1] The district court denied Storm's motion for summary judgment based on his claim of qualified immunity. We reverse the denial of summary judgment and remand with directions to grant qualified immunity to Storm. We deny Plaintiffs' motion to dismiss the appeal for lack of jurisdiction.

## I. Background

Storm was familiar with the Wenzel family. Explaining that Bourbon "is a small town," Storm testified that he had seen Wenzel numerous times and that he had responded to a domestic dispute involving Wenzel. Storm stated that Wenzel's brother Ronnie had described Wenzel as "dangerous" and that he had instructed Storm to be careful when dealing with Wenzel. An officer from a nearby town told Storm that Wenzel had fled when officers tried to pull him over for improper tags and that officers were unable to apprehend him. According to his affidavit, Storm also knew of physical altercations between Wenzel and other police officers, as well as knowing that the Bourbon Police Department was investigating Wenzel's methamphetamine use and distribution.

Storm worked the day shift on March 5, 2014. It was a bright, wintery day. The streets and highway were mostly clear, but there were patches of ice and snow on the country roads near Bourbon. Storm was in uniform and on patrol, driving a marked police car that was equipped with an in-car video system. His duty belt carried a pistol, a baton, and pepper spray.

---

[1]Plaintiffs also alleged state-law claims against Storm and state and federal claims against the City of Bourbon, Missouri. Storm has not appealed from the denial of official immunity on the state-law claims. The claims against the City have been dismissed and are not at issue in this appeal.

Storm had stopped Wenzel's nephew, Shawn, for a traffic violation earlier that morning. According to Storm, Shawn said to "be careful" if Storm came across Wenzel because Wenzel had said that he was "not going back to jail."

After completing the traffic stop, Storm resumed patrolling and observed Wenzel drive past him. Storm decided to check Wenzel's tags based on the information that the tags were improper. Storm turned around, activated his lights and siren, and began to follow Wenzel. The ensuing chase was visually recorded on Storm's in-car video system, but the audio portion of the system was not activated.

Wenzel sped through a stop sign and headed out of town, leading Storm on a chase that lasted ten or eleven minutes. The video shows Wenzel driving recklessly, frequently in the wrong lane, including when cresting hills and rounding turns. During the chase, dispatch relayed to Storm that Wenzel was classified as having "J3" status. Storm explained that the classification means "aggressive, known to be violent with weapons and violent towards law enforcement."

As Wenzel tried to turn onto a snow-covered road, his vehicle veered into a shallow ditch and came to an abrupt stop against the ditch embankment. Meanwhile, Storm stopped his vehicle a few car-lengths behind Wenzel's vehicle and opened the driver's side door. Storm testified that while he was looking for a road sign or landmark to communicate his location to dispatch he noticed that Wenzel had exited his vehicle and was quickly approaching him. Although he could not clearly see Wenzel's hands, Storm did not see any weapons. He testified that Wenzel's hands were at his sides with his palms facing backward. Storm exited his car, drew his firearm, stood behind his open car door, and shouted to Wenzel that he stop and show his hands.

The video shows Wenzel quickly exiting his vehicle and walking aggressively toward Storm's patrol car. Wenzel appears to be angry, with his arms swinging as he

walked.  The video shows that Wenzel did not comply with or even react to Storm's commands.  He instead continued to approach Storm, coming to within a few steps from him, whereupon Storm fired his weapon three times.  Approximately three seconds elapsed from the time Wenzel exited his vehicle to the time Storm fired the shots.  Wenzel was found to be unarmed.

The district court denied Storm's motion for summary judgment, concluding that the parties disputed "how Wenzel moved and to what extent his hands were visible to Storm."  D. Ct. Order of April 13, 2017, at 9.  The district court's order suggests that Storm violated Wenzel's clearly established right to be free from excessive force if Storm could see that Wenzel was not carrying a weapon and nonetheless used deadly force against Wenzel.  See id. at 10 ("While an officer is not constitutionally required to wait until he actually sees a weapon before employing deadly force against an individual, the visibility of the person's hands is an important factor.").

## II.  Discussion

We have jurisdiction over this interlocutory appeal under the collateral order doctrine.  Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).  When reviewing the denial of qualified immunity, we accept as true the facts that the district court found were adequately supported, as well as the facts that the district court likely assumed, to the extent they are not "blatantly contradicted by the record."  Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).  We review *de novo* issues of law.  See Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009).

Plaintiffs moved to dismiss the appeal, arguing that the district court's denial of qualified immunity was based on a disputed fact—namely, whether Storm could see Wenzel's hands.  For purposes of our review, we will assume that Storm could

see that Wenzel was not holding a weapon in his hands, for the record does not "blatantly contradict" that fact. We thus deny the motion to dismiss and proceed to the legal question whether Storm's conduct violated Wenzel's clearly established federal rights.[2] See Mitchell, 472 U.S. at 529 n.9 (emphasizing that "the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law"); Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc) (explaining that we have jurisdiction to "determine whether all of the conduct that the district court 'deemed sufficiently supported for purposes of summary judgment' violated the plaintiff's clearly established federal rights" (quoting Behrens v. Pelletier, 516 U.S. 299, 313 (1996))); see also Scott, 550 U.S. at 381 n.8 ("[O]nce we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, the reasonableness of [the officer's] actions . . . is a pure question of law." (citations omitted)).

Qualified immunity shields a law enforcement officer from liability in a § 1983 action unless the officer's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An officer is entitled to qualified immunity "unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Loch v. City of Litchfield, 689 F.3d 961, 965 (8th Cir. 2012) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).

We analyze excessive force claims in the context of seizures under the Fourth Amendment, applying its reasonableness standard. See Graham v. Connor, 490 U.S.

---

[2]Rejecting Plaintiffs' argument to the contrary, we conclude that Storm satisfied the requirements of Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure by adequately citing the parts of the record on which he relied.

386, 395 (1989). The Fourth Amendment requires us to consider, "based on the perspective of a reasonable officer on the scene, 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them.'" Ellison v. Lesher, 796 F.3d 910, 916 (8th Cir. 2015) (quoting Graham, 490 U.S. at 397). "The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." Loch, 689 F.3d at 965 (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)); see Brosseau v. Haugen, 543 U.S. 194, 197 (2004) ("[I]t is unreasonable for an officer to 'seize an unarmed, nondangerous suspect by shooting him dead.'" (quoting Garner, 471 U.S. at 11)).

We conclude that the district court erred in ruling that Storm's use of deadly force was not reasonable under the circumstances. Considering the version of the evidence that the district court assumed or likely assumed in reaching its decision, the facts and circumstances confronting Storm were that of a fleeing suspect whose reckless rules-violating driving constituted a hazard to oncoming motorists. Storm was aware of Wenzel's aggressiveness and of his violence towards law enforcement officers. The manner in which Wenzel exited his vehicle and charged towards Storm while exhibiting an angry visage was in keeping with the reputation he had earned during his earlier interactions with law enforcement officers. Given his knowledge of that reputation and the scant three seconds that he had to observe Wenzel's unabated approach towards him, it was reasonable for Storm to believe that Wenzel posed an immediate threat of serious physical harm to him, notwithstanding the fact that Storm could see that Wenzel's hands were empty and the later-discovered fact that Wenzel was unarmed. See Loch, 689 F.3d at 966 ("Even if a suspect is ultimately 'found to be unarmed, a police officer can still employ deadly force if objectively reasonable.'" (quoting Billingsley v. City of Omaha, 277 F.3d 990, 995 (8th Cir. 2002))).

-6-

We reject Plaintiffs' contention that it was unreasonable for Storm to use deadly force when, they say, he could have used his baton or his pepper spray to subdue Wenzel. We do not judge the use of force "with the 20/20 vision of hindsight," and we make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. A reasonable officer on the scene would have viewed Wenzel's indisputably aggressive approach as a precursor to a physical altercation. Storm was required to make a split-second decision in unpredictable and dangerous circumstances, and he was not constitutionally required to attempt to re-holster his firearm, grab his baton or pepper spray canister, and do battle with the fast-approaching, known-to-be-confrontational Wenzel. Cf. Thompson v. City of Monticello, 894 F.3d 993, 999 (8th Cir. 2018) (dismissing appeal for lack of jurisdiction where the video evidence did not conclusively establish that the plaintiff was "aggressive and confrontational such that a reasonable officer . . . would have believed he posed an immediate threat"); Raines v. Counseling Assocs., Inc., 883 F.3d 1071, 1075 (8th Cir. 2018) (dismissing appeal for lack of jurisdiction where the video evidence was "inconclusive as to whether or not Raines advanced on the officers in a manner that posed a threat of serious physical harm to an officer"), *petition for cert. filed*, 87 U.S.L.W. 3038 (U.S. July 11, 2018) (No. 18-110).

We reverse the order denying qualified immunity.

_____