# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2087
_____

Milton Green

*Plaintiff - Appellant*

v.

City of St. Louis; Officer Christopher Tanner, in his individual capacity

*Defendants - Appellees*

------------------------------

Cato Institute; Law Enforcement Action Partnership

*Amici on Behalf of Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 24, 2024
Filed: April 8, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

St. Louis Police Officer Christopher Tanner, in pursuit of a fleeing suspect who had fired at police officers, mistakenly shot off-duty Officer Milton Green. Officer Green filed this action under 42 U.S.C. § 1983 against Officer Tanner and the City of St. Louis, asserting Fourth and Fourteenth Amendment violations and claims under Missouri state law. After extensive discovery, the district court[1] granted defendants' motion for summary judgment. Expressly viewing the evidence in the light most favorable to plaintiff Green, the court concluded that Officer Tanner did not violate Officer Green's constitutional right to be free from unreasonable seizure and the use of excessive force; that Officer Green's Monell claim against the City failed for lack of proof of a constitutional violation; and that official immunity barred Officer Green's state-law claims. The court subsequently denied Officer Green's motions to alter or amend the judgment and to submit newly discovered evidence. Officer Green appeals the grant of summary judgment dismissing all claims and the order denying his motion to reopen discovery. Reviewing the grant of summary judgment *de novo* and the denial of post-judgment relief for abuse of discretion, we affirm.

## I. Background

The parties disputed many facts concerning the events in question throughout this litigation. Many core facts are uncontested. The district court based its decision on the evidence viewed in the light most favorable to Officer Green, as established by his "statement of material facts and defendants's statement of material facts not controverted by plaintiff." We draw the following summary from the parties' statements of material facts, using plaintiff's statement when the two conflict.

---

[1]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri (now retired), conducting proceedings with the consent of the parties under 28 U.S.C. § 636(c)(1).

At approximately 10 PM on the evening of June 21, 2017, officers of the St. Louis Metropolitan Police Department (SLMPD), including Officer Tanner, were surveilling and covertly following a suspected stolen vehicle. The vehicle occupants detected the police and fled, with the officers in pursuit. The police deployed spike strips to puncture the vehicle's tires; the occupants began shooting at the pursuing officers. The vehicle soon crashed near the home of Officer Green, an off-duty fifteen-year SLMPD officer who was with his neighbor in the driveway.

Officer Green saw the stolen vehicle crash. Two individuals exited the vehicle and ran to his neighbor's gangway. A police vehicle arrived and two officers began chasing the suspects. Officer Green saw a third individual exit the crashed vehicle. Hearing gunfire, Officer Green and his neighbor hid behind a car in the driveway. The third individual dropped to the ground, then got up, picked up his firearm, and continued through Officer Green's yard. He pointed the firearm at the car where Officer Green and his neighbor were hiding. Officer Green raised his department-issued firearm and commanded, "Police, put the gun down." The individual instead ran toward an alley with his gun still pointed at Officer Green.

Some of what happened next is disputed; we state the facts in the light most favorable to Officer Green. From behind, Officer Green heard the command, "Put the gun down." Assuming this was a direction from another officer, Officer Green dropped his firearm and lay on the ground. Gunfire from the direction of the fleeing suspects had ceased. Officers at the scene did not hear any shots fired in the two to three minute period between the time Officer Green dropped to the ground and when Officer Tanner shot Officer Green.

Detective Carlson, at the scene, identified Officer Green and yelled, "There's a[n] off-duty police officer here, don't shoot. His name [is] Milton Green. He lives here. Don't shoot." Detective Carlson instructed Officer Green to come to him. Officer Green stood up, picked up his firearm with his right hand, pointed the muzzle

toward the ground, and extended his left hand with his metal police badge visible for surrounding officers to see. It is undisputed that Officer Green then took a few steps toward Detective Carlson. He saw another officer approaching but continued to move toward Detective Carlson. There is no evidence Officer Tanner heard Detective Carlson's alert or knew the person approaching Carlson was Officer Green until after the shooting.

Officer Tanner and his partner, Officer Burle, arrived at the scene after the officers who pursued the first two suspects and joined the pursuit. Officers Tanner and Burle were approximately 30-50 feet away from Officer Green as he approached Detective Carlson. Officer Tanner testified that, as they approached, he saw a black male, whom he presumed to be a suspect from the crashed vehicle, on the ground with a gun next to him. The individual was wearing clothing that appeared similar to the clothing worn by the armed suspects that Tanner and Burle were pursuing. Officer Tanner testified that he did not see Detective Carlson as Tanner approached.

Both Officer Tanner and Detective Carlson had their flashlights directed toward Officer Green. Officer Green testified that, as he turned and approached Detective Carlson, he took off his badge and put it out in front of him with his left hand extended so people could see it, with the badge facing in the direction of Officer Tanner or any other officer. Officer Tanner testified that he saw Officer Green stand up, pick up the firearm with his right hand while facing away from Officer Tanner, turn toward Tanner, and begin to move toward officers. "[I]t looked like a nickel-plated gun" in Officer Green's raised hand. Officer Tanner commanded Officer Green to drop the firearm. Green testified he heard one command to drop the gun but Officer Tanner fired without allowing sufficient time to comply. The shot hit Officer Green in the elbow, causing permanent injuries. As Officer Green fell, Detective Carlson yelled at Officer Tanner, "You shot Milton. I told you not to shoot him. I told you not to shoot him."

-4-

Officer Green's complaint asserted claims under § 1983 and Missouri state law: (1) an unreasonable seizure claim against Officer Tanner; (2) a use of excessive force claim against Officer Tanner; (3) a Monell municipal liability claim against the City of St. Louis for engaging in customs and practices of unreasonable seizures, excessive force, and failure to train and supervise; and (4) a battery claim under Missouri state law against Officer Tanner. The defendants moved for summary judgment on all claims in December 2022. The district court granted the motion on March 6, 2023. In granting summary judgment, the district court considered disputed facts in the light most favorable to Officer Green. In particular, the court assumed Officer Green had his firearm pointed at the ground in his right hand and not in the direction of Officer Tanner; Officer Green was prominently displaying his badge in his raised left hand; and Officer Tanner gave only one command to drop the firearm without giving sufficient time for compliance before shooting.

After recounting the facts underlying our decisions in Liggins v. Cohen, 971 F.3d 798 (8th Cir. 2020), and Loch v. City of Litchfield, 689 F.3d 961 (8th Cir. 2012), the court explained:

> Defendant Tanner encountered similarly volatile facts and circumstances in this case. He arrived at the scene as the result of a car chase with a stolen vehicle, during which the vehicle's occupants shot repeatedly at the pursuing officers' vehicles. He knew that three suspects bailed out of the chased vehicle and fled. While plaintiff asserts that Detective Carlson yelled that plaintiff was an off-duty officer and that no one should shoot, no evidence in the record suggests that defendant Tanner heard Carlson's instruction. As he approached plaintiff's area, [Tanner] saw plaintiff stand up while picking up a gun, and he perceived that plaintiff was raising the gun in his direction. Under these circumstances, defendant Tanner had probable cause to believe that plaintiff posed an immediate threat of death or serious bodily injury, and his use of force was therefore reasonable. . . . Tanner instructed plaintiff to drop his gun . . . . When defendant Tanner perceived that plaintiff was pointing a gun at him, Tanner could have

reasonably concluded that it was not feasible to wait for plaintiff's compliance.

\* \* \* \* \*

While the evidence here does not show that plaintiff was actually pointing a gun at defendant Tanner, it consistently shows that defendant Tanner perceived that plaintiff was pointing a gun at him. Defendant Tanner's mistake and his resulting use of force were reasonable.

Officer Green then filed a motion to alter or amend the summary judgment order Federal Rule of Civil Procedure 59(e) and sought to submit newly discovered evidence. The district court denied the Rule 59 motion:

Though Tanner did not see what was in plaintiff's left hand, it is undisputed that plaintiff had a gun in his right hand when Tanner shot him. . . . Under the circumstances, Tanner's mistake of fact -- that plaintiff was raising the gun that he saw plaintiff pick up and hold in his right hand -- was reasonable.

The court further denied Officer Green's request to submit new evidence because the new evidence related to his Monell claim against the City, which failed for lack of proof of an underlying constitutional violation. This appeal followed.

## II. Discussion

We review the grant of summary judgment *de novo*. "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.) (en banc) (quotation omitted), cert. denied, 565 U.S. 978 (2011). "At the summary judgment stage, facts must be viewed in the light most

favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007), quoting Fed. R. Civ. P. 56(c). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Where the parties and witnesses have different recollections of the events at issue, the question is whether there are *material* issues of disputed facts that would permit "a reasonable jury [to] return a verdict for the nonmoving party based on the evidence." Quick v. Donaldson Co., 90 F.3d 1372, 1377 (8th Cir. 1996), citing Anderson, 477 U.S. at 248. "A fact is 'material' if it may 'affect the outcome of the suit.'" Erickson v. Nationstar Mortg., LLC, 31 F.4th 1044, 1048 (8th Cir. 2022), quoting Anderson, 477 U.S. at 248.

## A. The § 1983 Claims Against Officer Tanner

Officer Green claims that Officer Tanner's shooting was an unreasonable seizure and the use of unreasonable deadly force in violation of the Fourth and Fourteenth Amendments. The governing Fourth Amendment standard is important in "deadly force" cases. In the lead case, the Supreme Court held that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7 (1985). Following Garner, the Supreme Court held in Graham v. Connor, 490 U.S. 386, 395 (1989), that "*all* claims that law enforcement officers used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."

Use of force that results in death is of course a seizure. Even if some uses of excess force that do not result in death may not amount to a Fourth Amendment

-7-

"seizure," as that term has been defined,[2] the Supreme Court has clarified that "Garner was simply an application of the Fourth Amendment's 'reasonableness' test . . . to the use of a particular type of force in a particular situation. . . . Whether or not [Officer Tanner's] actions constituted application of 'deadly force,' all that matters is whether [his] actions were reasonable." Scott, 550 U.S. at 382-83.

The Fourth Amendment reasonableness test asks "whether the amount of force used was objectively reasonable under the particular circumstances." Z.J. ex rel. Jones v. Kan. City Bd. of Police Comm'rs, 931 F.3d 672, 681 (8th Cir. 2019) (quotation omitted). "The issue is whether the totality of the circumstances -- including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest -- justifies a particular sort of seizure." Liggins, 971 F.3d at 800 (citations omitted). As the district court recognized, reasonableness must be viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "[W]e examine the information that the officer possessed at the time of his decision to use such force." Schulz, 44 F.3d at 648 (cleaned up). At the summary judgment stage, "[o]nce the predicate facts are established, the reasonableness of [an officer's] conduct under the circumstances is a question of law." Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. "In dangerous situations where an officer has reasonable grounds to believe that there is an imminent threat of serious harm, the officer may be justified in using a firearm before a subject

---

[2]See United States v. Mendenhall, 446 U.S. 544, 554-55 (1980); Schulz v. Long, 44 F.3d 643, 647 (8th Cir. 1995).

-8-

actually points a weapon at the officer or others." Liggins, 971 F.3d at 801. "[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used . . . if, where feasible, some warning has been given." Garner, 471 U.S. at 11-12; see Arnold v. McClinton, 112 F.4th 595, 603-04 (8th Cir. 2024); Smith v. Kilgore, 926 F.3d 479, 485 (8th Cir. 2019).

Officer Green argues the district court erred in assuming the fact that Officer Tanner perceived Green was pointing a gun at Tanner because Officer Tanner's own testimony forecloses the possibility that Tanner saw the metal badge in Green's left hand and mistook it for a gun -- there is "no evidence in the record" that Tanner saw what was in the Green's left hand, and "Tanner's own testimony . . . admits he did not and could not see" the object in the left hand.

Officer Green testified that, in response to Detective Carlson's directive, he got up off the ground, picked up his gun, and started walking toward Carlson with his left hand holding his badge "so people can see it" and his right hand holding the gun at his side with the muzzle pointing down. Officer Tanner testified that he saw Green on the ground with the gun nearby and was surprised to see Green rise and pick up the gun in a threatening manner. However, Tanner admitted that Green's left hand was blocked from view and he did not see a badge. Green's statement of uncontroverted material facts recited that he stood up, started walking toward Carlson, extended his left hand toward officers holding his metal badge that he wanted them to see, and holding a gun in his right hand with the muzzle pointing to the ground. There is no evidence Officer Tanner saw Officer Green approach officers, only that he saw Green stand up and pick up the gun on the ground. Green and other officers testified that he held the gun in his right hand with the muzzle pointed down. Officer Green argues the position he held the gun is a material, outcome determinative fact, citing the majority opinion in Partridge v. City of Benton, 70 F.4th 489, 491-92 (8th Cir. 2023). These differences do not create a genuine issue of *material* disputed fact

if the "crucial common facts" in all accounts is consistent.  Malone v. Hinman, 847 F.3d 949, 953 (8th Cir.), cert. denied,  583 U.S. 870 (2017).

As the district court recognized, reasonableness turns on "the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396.  The victim in Partridge was holding a gun and threatening suicide.  Unless he pointed the gun at the officers dispatched to find and assist the victim, there was no "menacing action" that justified the officers use of deadly force.  See Partridge, 70 F.4th at 492 n.2.  Here, the totality of the circumstances was far different.  Officer Tanner was pursuing suspects who fired at the pursuing officers, crashed their vehicle, and fled.  Tanner had heard additional gunfire moments before and had reason to suspect that Officer Green, who was holding a gun, was the third occupant of the crashed vehicle.  It was not a dark night and two flashlights were trained on Officer Green.  In these circumstances, would a reasonable officer perceive that Green posed a threat of serious physical harm to Tanner and other officers?

If Officer Green was the third suspect and was approaching officers with a gun *pointed to the ground*, there was still a serious risk he could raise the gun and fire at the officers in a split second.  "In dangerous situations where an officer has reasonable grounds to believe that there is an imminent threat of serious harm, the officer may be justified in using a firearm before a subject actually points a weapon at the officer or others."  Liggins, 971 F.3d at 801 (citations omitted).  The reasonableness determination must allow for the need to make split-second judgments about the amount of force that is necessary in tense, uncertain, and rapidly evolving situations.  See Garner, 490 U.S. at 396-97.  "There is no constitutional or statutory right that prevents an officer from using deadly force when faced with an apparently loaded weapon."  Rogers v. King, 885 F.3d 1118, 1122 (8th Cir. 2018) (quotation omitted).

Officer Green argues that determining whether Officer Tanner was reasonably mistaken in thinking Green was armed is a question of fact for the jury. We disagree. "Even if a suspect is ultimately found to be unarmed, a police officer can still employ deadly force if objectively reasonable." Loch, 689 F.3d at 966 (quotation omitted). "Once the court has assumed a particular set of [predicate] facts[,] . . . whether [Green's] actions rose to a level warranting [Tanner's] use of force is a question of law for the court, not a question of fact." Liggins, 971 F.3d at 801, citing Scott, 550 U.S. at 381 n.8. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene." Kisela v. Hughes, 584 U.S. 100, 103 (2018), quoting Graham, 490 U.S. at 396.

Officer Green argues our decisions in Loch and Liggins are distinguishable because they involved "split-second" decisions to shoot. We disagree. The circumstances leading up to Officer Tanner seeing a perceived suspect confronting officers with a gun in his hand made this a split-second decision. In Loch, an officer with prior information that a suspect was armed saw the suspect engage in a heated argument with another individual, ignore commands to get on the ground, advance toward the officer with his arms raised, and reach for a black object on his hip that turned out not to be a gun. 689 F.3d at 965-67. We affirmed summary judgment in favor of the officer. "An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment." Id. at 966. This was "the type of 'tense, uncertain, and rapidly evolving' situation requiring 'split-second judgments' that we are hesitant to second-guess with the benefit of hindsight." Id. at 967, quoting Graham, 490 U.S. at 396-97.

In Liggins, an officer shot a fleeing suspect holding a firearm in one hand with the barrel pointed downward. 971 F.3d at 800. We reversed the district court's denial of summary judgment because the suspect could "raise the gun and shoot . . . [in] an instant." Id. at 801. We concluded the officer's split-second decision to fire without "discern[ing] whether [the suspect] was carrying the gun in an unusual

manner or to shout a warning and wait for him to react" was reasonable. Id. "Both common sense and our cases suggest that a warning is less likely to be 'feasible' in a high-pressure situation that requires a split-second judgment." Morgan-Tyra v. City of St. Louis, 89 F.4th 1082, 1086 (8th Cir. 2024) (citation omitted).

Viewing this "tense, uncertain, and rapidly evolving situation" from Officer Tanner's perspective, we agree with the district court that a reasonable officer could make the split-second decision that "the suspect pose[d] a significant threat of death or serious physical injury to [Officer Tanner or other officers]." Garner, 471 U.S. at 3. Without doubt, in hindsight the decision to shoot was unnecessary and highly unfortunate. "It may appear, in the calm aftermath, that an officer could have taken a different course, but we do not hold the police to such a demanding standard." Estate of Morgan v. Cook, 686 F.3d 494, 497 (8th Cir. 2012) (quotation omitted); see Schulz, 44 F.3d at 649.

Accepting the facts cited by Officer Green, we agree with the district court that Officer Tanner's use of force was objectively reasonable. Officer Tanner confronted the same imminent threat of serious injury that the officers in Loch and Liggins faced. This is the type of dangerous situation where an officer has reasonable grounds to believe that an imminent threat of serious harm "justifies using a firearm before a subject actually points a weapon at the officer or others." Liggins, 971 F.3d at 801; see Garner, 490 U.S. at 396-97. Accordingly, we affirm the grant of summary judgment dismissing the individual § 1983 claims against Officer Tanner.

## B. Monell Claims

Officer Green asserted § 1983 claims against the City of St. Louis based on an alleged continuing, widespread, persistent pattern of unconstitutional misconduct by the City's employees, namely, indifference to officer-involved uses of force and a failure to adequately investigate these matters. See Monell v. N.Y.C. Dep't of Soc.

Servs., 436 U.S. 658, 691 (1978); Mitchell v. Kirchmeier, 28 F.4th 888, 899-900 (8th Cir. 2022). "Absent a constitutional violation by a city employee, there can be no § 1983 or Monell liability for the City." Edwards v. City of Florissant, 58 F.4th 372, 376 (8th Cir. 2023) (cleaned up). The district court granted the City summary judgment on these claims because Officer Tanner did not violate Officer Green's constitutional rights. On appeal, Officer Green argues the court erred in dismissing his claims against Officer Tanner and therefore we should also reverse the dismissal of his Monell claims. As we are upholding the dismissal of Officer Green's individual claims against Officer Tanner, there was no constitutional violation and no error in granting summary judgment to the City.

## C. Denial of Post Judgment Motions

Officer Green argues the district court erred in denying his post judgment motions. He first argues the court erred in denying his Rule 59(e) motion to alter or amend the judgment because the court changed its theory of the governing facts and erred by again crediting facts viewed from Officer Tanner's perspective that are contradicted by other witnesses. After careful review, we agree with the district court that this argument and the new evidence presented did not meet the demanding standard for obtaining Rule 59(e) relief. See Yeransian v. B. Riley FBR, Inc., 984 F.3d 633, 636 (8th Cir. 2021); United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933-35 (8th Cir. 2006). Accordingly, we affirm the denial of Rule 59(e) relief for the reasons stated by the district court.

Officer Green's second post-judgment motions sought to reopen discovery in light of newly-discovered evidence. However, this evidence related entirely to the Monell claims and would not establish a constitutional violation by a City employee that is required to establish Monell liability. Thus, the district court did not abuse its discretion in denying this motion.

**D. Missouri Battery Claims**

Officer Green argues the district court erred in dismissing his state law battery claims as barred by Missouri's doctrine of official immunity. We disagree. Under Missouri law, "public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions." State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 444 (Mo. banc 1986) (quotation omitted). The use of force when officers "draw and fire a weapon, even if they are negligent," is a discretionary duty. N.S. ex rel. Lee v. Kan. City Bd. of Police Comm'rs, 35 F.4th 1111, 1115 (8th Cir. 2022) (cleaned up), cert. denied sub nom. N.S. ex rel. Stokes v. Kan. City Bd. of Police Comm'rs, 143 S. Ct. 2422 (2023). "It is hard to imagine a setting more demanding of judgment than one in which line officers of the police department confront a person who has recently flourished a gun." Green v. Denison, 738 S.W.2d 861, 865 (Mo. 1987), abrogated on other grounds by Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760 (Mo. 2006).

"[O]fficial immunity does not apply to discretionary acts done in bad faith or with malice." Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015) (quotation omitted). Officer Green argued that Officer Tanner's malice or bad faith can be inferred from evidence that Green "did not present a threat to Tanner and that Tanner shot him without providing time to comply with his warning." The district court concluded the evidence viewed in the light most favorable to Officer Green did not contain facts from which bad faith or malice could reasonably be inferred because Tanner used force based on his mistaken belief that the badge Officer Green pointed at officers was a gun.

On appeal, Green argues we should vacate this decision because the district court used the same erroneous reasoning it used in dismissing his § 1983 federal claims, "where it construed all the facts in a light most favorable to the moving, rather than non-moving party." As we have explained, this is an erroneous characterization

of the district court's proper evaluation of the summary judgment evidence in this excessive force case. A finding of bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive." Adolf, 706 S.W.2d at 447 (quotation omitted). Here, there is no evidence that Officer Tanner acted with malice or bad faith. When officers make split-second use-of-force decisions, absent evidence of ulterior motive or malice they are entitled to official immunity. See N.S., 35 F.4th at 1115, and cases cited.

For the foregoing reasons, the judgment of the district court is affirmed.

_____